UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-61093-CIV-SMITH

PROGRESSIVE CARE, INC.,

    Plaintiff,

v.

KEYCENTRIX, LLC,

    Defendant.

_____/

**ORDER GRANTING MOTION TO COMPEL ARBITRATION
AND STAYING ACTION**

This cause is before the Court upon Defendant's Motion to Dismiss and Compel Arbitration [DE 16], Plaintiff's Opposition [DE 17], and Defendant's Reply [DE 27]. Defendant seeks to compel arbitration based on an arbitration agreement that Defendant maintains was incorporated by reference into the parties' agreement. For the following reasons, the Motion to Compel Arbitration is granted and the case is stayed pending the outcome of the arbitration.

**I.    Background Facts**

Plaintiff and Defendant entered into an agreement whereby Defendant licensed to Plaintiff certain pharmacy management software. The agreement is documented in a "Quote Form," signed by Defendant's President and Plaintiff's Chief Executive Officer on August 28, 2020. The Quote Form is two pages long. The first paragraph on the second page of the Quote Form includes the following:

> This quote ("Quote) is issued by KeyCentrix, LLC ("KeyCentrix") and applies to the Customer specified herein. Customer's authorization of this Quote via DocuSign shall expressly constitute Customer's acceptance and agreement to be bound by its terms. Customer hereby orders the goods, software licenses, or services specified above in this Quote (collectively, the "Products"). KeyCentrix

> hereby agrees to provide such Products to Customer in accordance with, and subject to, the applicable terms and conditions for the specific Products being licensed or sold to Customer as set forth herein and as provided at http://www.keycentrix.com/legal-terms ("Standard Terms").  This Quote incorporates the following documents in effect as of the date specified above as the "Quote Effective Date" in the following order of precedence, all of which constitute the "Agreement": (i) this Quote, and (ii) the Product specific Standard Terms.

(DE 16-1 at 6.)  The web address for the Standard Terms is not provided as a hyperlink.  On the same page, just above the signature blocks, the Quote Form states: "By signing below, Customer hereby (i) agrees to be bound by the terms of the above Quote and KeyCentrix's Product-specific Standard Terms, and (iii) authorizes the purchase of the KeyCentrix Products described in the above Quote."  (*Id.*)

The webpage address provided for the Standard Terms is a page containing several links, one of which is labeled "Software Standard Terms and Conditions."  Clicking on that link takes a person to a multipage document, titled "Software Licensing Standard Terms and Conditions."  The very last paragraph of the document states:

> 14.16 Arbitration.  In the event of any dispute or controversy arising out of or related to this Agreement, including the interpretation of any provision of this Agreement, which cannot be resolved informally by the parties, such dispute will be resolved by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules then in effect, except as such rules may be modified by this Agreement or by the mutual consent of the parties.  Any arbitration proceeding conducted hereunder shall be held in Wichita, Kansas and will be enforceable in any court of competent jurisdiction.  BEFORE INSTITUTING ARBITRATION, LICENSEE AGREES TO PROVIDE KEYCENTRIX WITH AN OPPORTUNITY TO RESOLVE THE CLAIM BY SENDING A WRITTEN DESCRIPTION OF THE CLAIM TO KEYCENTRIX.  IF KEYCENTRIX IS UNABLE TO RESOLVE THE CLAIM WITHIN THIRTY (30) DAYS AFTER RECEIPT OF NOTICE, THEN LICENSEE MAY INITIATE ARBITRATION.

(DE 16-1 at 36-37 (all caps in original).)

Plaintiff's three-count Complaint alleges that prior to entering into the agreement, Defendant represented to Plaintiff that its software would be able to satisfy Plaintiff's need for

2

pharmacy software management. After implementation of Defendant's software at two locations, Plaintiff was dissatisfied with its performance. As a result, Plaintiff's business suffered, leading Plaintiff to file its Complaint. The Complaint alleges claims for fraudulent inducement, breach of express warranty, and breach of implied warranty.

**II.     Discussion**

Defendant seeks to compel arbitration based on the arbitration agreement contained in the Standard Terms. Plaintiff maintains that the parties do not have a valid arbitration agreement because the Standard Terms were not properly incorporated into the Quote Form and, therefore, were not part of the parties' agreement. Plaintiff does not dispute that, if the arbitration agreement is valid, it would encompass the claims in Plaintiff's Complaint.

To compel arbitration, a court must determine whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). The "question of whether an arbitration agreement exists at all is 'simply a matter of contract,'" which is determined by ordinary state-law principles of contract formation. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Here, both parties agree that the applicable state law is Florida.

Under Florida law, "[i]t is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." *OBS Co. v. Pace Const. Corp.*, 558 So. 2d 404, 406 (Fla. 1990). "To incorporate by reference a collateral document, the incorporating document must (1) specifically provide that it is subject to the incorporated collateral document and (2) the collateral document to be incorporated must be sufficiently described or referred to in the incorporating agreement *so that the intent of both parties may be ascertained.*" *Spicer v. Tenet Fla. Physician Servs., LLC*, 149 So. 3d 163, 166 (Fla. 4th DCA 2014) (citations

and internal marks omitted; emphasis in original).  While the contract must contain more than a mere reference to the collateral document, it need not state that it is "subject to" the provisions in the collateral document.  *Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627, 631 (Fla. 1st DCA 1999).  "It is sufficient if the general language of the incorporating clause reveals an intent to be bound by the terms of the collateral document." *Id.*

Plaintiff does not dispute that the Quote Form stated that it was "subject to" the Standard Terms.  Instead, Plaintiff disputes that the Standard Terms were sufficiently described or referred to in the Quote Form for incorporation by reference.  Plaintiff argues that the reference to the Standard Terms in the Quote Form was inadequate because it did make any mention of an arbitration provision.  Plaintiff, however, has failed to provide the Court with any authority stating that the language incorporating the Standard Terms had to include language indicating that the Standard Terms contained an arbitration provision.

Plaintiff also relies on *Spicer* to support its argument that the Standard Terms were not adequately incorporated into the Quote Form.  Plaintiff's reliance is misplaced.  In *Spicer*, the incorporation language named the collateral document, but the collateral document was not provided to the plaintiff at the time the plaintiff executed the contract and the contract incorporating the collateral document did not tell the plaintiff where the collateral document could be found.  *Id.* at 167.  The *Spicer* court noted that "cases finding sufficient description of a collateral document to create an incorporation by reference involve more detailed descriptions of the collateral document, <u>*or* where the document could be found</u>." *Id.* (emphasis added; citation omitted).  Here, the Quote Form gave the web address for a link to the Standard Terms, thus informing Plaintiff where to find the incorporated document.  Consequently, *Spicer* undermines Plaintiff's argument.

Plaintiff's reliance on cases involving "clickwrap" and "browsewrap"[1] are also inapposite because the parties' agreement was not an internet sale. While the parties signed the Quote Form online, the transaction did not occur on a website; Plaintiff did not purchase Defendant's product directly from Defendant's website. Thus, case law involving the enforceability of arbitration agreements in clickwrap and browsewrap have no application to the instant matter because the Standard Terms are neither clickwrap nor browsewrap.

Plaintiff further argues that it did not assent to the arbitration agreement because it never saw it and was unaware of it. Plaintiff argues that the print incorporating the Standard Terms and giving the website address for them was small and buried on the second page of the Quote Form. Plaintiff further argues that the arbitration agreement was hidden at the very end of the multi-page Standard Terms. Plaintiff, however, did assent to the Standard Terms by signing the Quote Form. The Quote Form noted in two separate places, including directly above where Plaintiff signed, that it was subject to the Standard Terms. The Quote Form told Plaintiff where to obtain a copy of the Standard Terms. The fact that Plaintiff chose not to read the incorporated Standard Terms prior to executing the Quote Form does not mean that Plaintiff did not agree to the provisions in the Standard Terms, including the arbitration agreement. *See Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 348 (Fla. 1977) ("No party to a written contract in [Florida] can defend against its enforcement on the sole ground that he signed it without reading it.").

---

[1] "Clickwrap" and "browsewrap" are types of agreements found in internet sales. *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017). "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *Id.* "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process." *Id.* Thus, with a browsewrap agreement, the purchaser can complete the online sale without visiting the page containing the terms and conditions. *Id.*

The terms of the Quote Form, including its incorporation of the Standard Terms, indicate that the parties intended to be bound by the Standard Terms. The Quote Form set out where the Standard Terms could be found. Thus, the Standard Terms, including the arbitration agreement, were incorporated by reference into the Quote Form. Accordingly, the arbitration agreement is enforceable.

Consequently, it is

**ORDERED** that:

1. Defendant's Motion to Dismiss and Compel Arbitration [DE 16] is **GRANTED in part**.

    a. The parties shall arbitrate their dispute in accordance with the terms of their arbitration agreement.

    b. This action is **STAYED** pending the outcome of the parties' arbitration.

2. All pending motions not otherwise ruled upon are **DENIED as moot.**

3. The Clerk is directed to **administratively CLOSE** this case.

DONE and ORDERED in Fort Lauderdale, Florida, this 3d day of November, 2022.

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE

Copies to all counsel of record